## INJURY TO EMPLOYE OUTSIDE THE LINE OF HIS EMPLOYMENT.

[Circuit Court of Lucas County.]

THE TOLEDO, BOWLING GREEN & FREMONT RY. CO. v. CONRAD PFISTERER.

Decided, June 25, 1904.

*Negligence—Interurban Railways—Volunteer—Fellow-Servant—Injury from Fall of Trolley Pole.*

One who is employed as a section hand by an electric railway company and is, while riding to his place of work in one of the company's passenger cars, thrown therefrom and injured while attempting in a proper manner to preserve the company's property from danger by replacing the trolley-pole wheel on the wires, is not to be considered as a mere volunteer, but is entitled to protection as an employe against the company's negligence in the premises, where it also appears that the conductor, whose special duty it was to replace the wheel, was inside the car taking up tickets at the time, and was unaware of the situation, and that plaintiff was experienced in, and had performed the same service before to the knowledge of the conductor and the superintendent and manager of the company.

HULL, J.; HAYNES, J., concurs; PARKER, J., not sitting.

Pfisterer was the plaintiff below, and brought his action against the railway company to recover damages for injuries which he claims he sustained on account of the negligence of the railway company. The railway company claimed that it was not negligent in the respect complained of, and further, that Pfisterer, in what he did and was doing at the time of his injury, was a volunteer merely, not in the employ of the company for that purpose, and therefore that the company was not liable to him.

The plaintiff in error, the defendant below, was operating an electric street or interurban railroad between Perrysburg and Bowling Green, Wood County, Ohio, at the time of Pfisterer's injury, in June, 1900. He was employed at that time as a section man, engaged either in building or repairing the road somewhere in the neighborhood of Bowling Green, and on the morning of the day of his injury, he, with other section men, left Perrysburg on a car leaving there at 6:10 o'clock to go to the place where they were to work. After they had proceeded a few miles, the evidence tends to show that Pfisterer was standing in the vestibule of the car. There is some evidence that he was inside, and went out, but the evidence tends to show that at the time of his injury he was standing in the vestibule. The car was going from twenty to thirty-five miles an hour. There is some conflict on this, but it was clearly going at a high rate of speed. There is some question as to where the conductor of the car was at the time, but we think the evidence shows that he was somewhere inside the car, probably within three or four seats of the rear of the car.

The trolley pole wheel came off the wire as the car was running along at this rate of speed. There were cross-wires, as is usual, some ninety feet apart—guy-wires, perhaps called— and when the trolley pole came off it struck these wires. The evidence shows that Pfisterer was standing in the rear of the vestibule of the car, right at the window, and took hold of the trolley rope, for the purpose of putting the wheel back on the wire, and when he pulled down on the rope, the pole became detached from the top of the car, came out of its socket, and fell off the car and struck the ground, and Pfisterer became en-

tangled in the trolley pole rope at the rear end of the car, and it became wrapped around his body or limbs, and when the pole struck the ground Pfisterer was suddenly pulled out of the back window to the ground, striking the ground violently. The trolley pole was attached to the car, and after Pfiisterer was thus pulled out of the window he was dragged along by the rope quite a distance behind the car, until it was cut by the conductor. He was seriously injured. The trial resulted in a verdict of $1,250, on which judgment was entered. These proceedings in error are to reverse that judgment.

There were various grounds of negligence set up in the petition—as to the speed the car was going, the fact that the rope was atached to the rear of the car, and other claims were made by the plaintiff—but the case was finally submitted to the jury upon one ground of negligence: that the trolley pole was insecurely fastened in its socket on the top of the car, and as a consequence the plaintiff was injured in the manner stated. All the other claims of negligence were excluded by the court in its charge to the jury.

The railroad company claims that Pfisterer at the time was a mere volunteer, and therefore not entitled to recover. He was not employed, it is urged, to do anything in the way of running or managing the car. He was simply going to his work, it is said, as a section man; and that it was the duty of the conductor to run the car; that therefore Pfisterer comes under the rule of law that one who volunteers to interfere with the business of another can not recover.

It is claimed, on the other hand, by Pfisterer, that he did this at the request of the conductor, and that the circumstances were such at that time that he ought not to be regarded as a volunteer. It is claimed further by Pfisterer that he and other section men had performed this service upon the cars of the road in the presence of the superintendent and manager of the company, while riding on the cars, so that the service would be regarded as having been done under the authority and with the consent of the company; and that therefore he was entitled to the same protection when doing that work as when doing work as a section hand.

The court in its charge to the jury required the jury to find, in order to entitle the plaintiff to a verdict, that this work had been done by Pfisterer or other section men in the presence of the manager and officers of the railway company such a length of time as to show their knowledge and consent to his performing such service, and that unless they found this, they should return a verdict in favor of the defendant. Upon this charge a verdict was found in favor of the plaintiff.

It is claimed by the defendant in error that he was entitled to recover whether the jury were warranted by the evidence in finding that the company had knowledge that he was performing such service or not. A number of authorities have been cited by counsel both for the plaintiff and for the defendant, upon the question of the liability of the company to Pfisterer while performing this service.

It has been held by the Supreme Court in 63 O. S., 236, and 43 O. S., 224, substantially that where one is requested by an employe of a company to perform a service for the employe in behalf of the company, that if such person complies with the request, and has at the same time an interest in the performanc of the work himself, that he is entitled to protection from the negligence of the employer or the servants of the company. It is said that a person thus situated is not to be regarded as a trespasser or as a volunteer; that he is upon the premises of the master, while not with his consent, yet without his objection, and that at the same time he is doing something in which he himself is interested, and that he is not to be regarded, as the court say, as a volunteer or as a servant, but that his position is somewhere between the two; that he is doing this work, as the Supreme Court say, by suffrance of the master; that he himself having a personal interest in doing it while doing it, he is entitled to protection. This question is discussed at some length in 63 O. S., 236. This is said in the third paragraph of the syllabus.

"One who is invited by a servant of a corporation in charge of its work or service to assist him therein, and does so with some purpose or benefit to be subserved in his own behalf in addition to the purpose of so assisting, is not a volunteer, and

is entitled while so assisting to be protected against the negligence of the servants of the company.''

And the question is discussed quite fully in the opinion by Judge Burket. In this case it was the duty of the station agent of the railroad company to set the lights in the switches near the station house. Instead of doing it himself, he employed a boy, the plaintiff, to do it for him, and gave him some compensation for the service; and while the boy was doing the work, he was injured by a torpedo that had been left on the track. The court held that the boy was not to be considered as a mere volunteer or trespasser, as he was doing the work at the request of an employe of the company, and had himself a personal interest in it.

The case in 43 O. S., 224, is cited in the case in 63 O. S. with approval. In this case a man was riding on a street car—a horse car evidently—and the car had gone past a siding where it was to pass another car. It became necessary to shove the car back to the switch to allow the other car to pass, and this passenger assisted at the request of an employe of the railroad company in doing the work, and while so doing was injured. The court held he was not a mere volunteer, for the reason that while he had no financial interest in this transaction, he was interested in continuing his journey, and having the car proceed without delay, and he having done this at the request of the employe of the company, he was held to be neither volunteer nor a trespasser.

It was sought to show in the case at bar that Pfisterer had a financial interest in having the car proceed. It was claimed that his day's work, his time for the day, did not begin until he had reached his work; that he ought to be there at 7 o'clock in the morning, and if he was not there he would be ''docked.'' This, however, was disputed, and it was claimed on behalf of the company that his time began from the time he got on the car at 6:10 in the morning, and that he and the other workmen stopped at 5 in the evening. We are inclined to think that the weight of the evidence shows that his time began when he got on at 6:10 in the morning, and therefore he was traveling on the

"company's time," as it is called, at the time of the accident.

It is clear from the record that no objection had ever been made by the officers of the company, and there is evidence tending to show that section men had done this kind of work before, and that plaintiff and others had done it on the work train. The evidence tends to show that on a former occasion the conductor had requested Pfisterer to do this work for him. Kinney was the name of the conductor. He was not called as a witness, and the testimony of the plaintiff was undisputed that Kinney had before that requested him to do this work for him, at times when the conductor was busy in the car.

No case has been called to our attention exactly like this one, but it seems to us, after reading this record very carefully, that under the circumstances Pfisterer was entitled to protection against the negligence of the company. He was in fact in the employ of the company; at the time he was not a trespasser on the car; he was on his way to his work; he had performed this service before at the request of the conductor; he was not interfering arbitrarily, or interfering where he knew his services were not required; he was not doing anything that he had been told not to do. The conductor, at the time this occurred, according to the weight of the evidence, in our judgment, was inside the car where he could not immediately attend to the matter, engaged in taking up tickets. Pfisterer, we think, as he claims, was standing in the vestibule when the wheel came off the wire, and if so, he was the nearest to the rope. There were some other men standing there, but no one nearer than he. As soon as the wheel came off the pole began to strike upon the guy-wires. It interfered with the progress of the car. If it had not been gotten on again soon, it would have been necessary to stop the car. The property of the company was in danger of damage; the cross-wires were in danger of being broken or injured. It seems to us, in view of the facts that Pfisterer was at the time in the employ of the company, that the property of his master was in danger of damage, that the speed of the car upon which he with other section men and passengers was being interfered with and impeded by this accident, that he had the right, as such employe, and that it was his duty, to put

out his hand to replace the pole and protect the property of the company in whose employ he was. It does not appear that he did this work in any improper manner. The evidence shows that he had had experience in doing this kind of work. It does not appear that he was incompetent to do it. He had done it before on both passenger and work trains.

We find no case directly in point. There are many cases where a servant has stepped out of the scope of his employment at the request of employes, without any reason for doing it, where it has been held that he could not recover, and where an outsider, with no interest himself, has been called in by an employe to aid him in his employment, it has been held that he was a mere volunteer and could not recover.

We all know as a matter of common knowledge, when a trolley wheel comes off the wire, with the car going twenty-five miles an hour, what the consequences are. It seems to us it ought not to be the law, where an employe is standing by under such circumstances, that if he lifts his hand to preserve the property of the company—attempted to do a thing which he was perfectly competent to do—that he did this at his own risk, and was not entitled to protection against the negligence of his master. And we think, regardless of the way in which the case was submitted to the jury, that plaintiff had the right to the protection of an employe of the company. The court, however, did not go that far. It instructed the jury that the plaintiff could not recover, unless they found that this had been before that done with the knowledge and consent of the company, through its officers, and there was evidence tending to show that the plaintiff and others had done this when the manager and the superintendent were on the cars. It appears from the testimony of the manager that the company did not, so far as he was concerned at least, disapprove of a section man doing this kind of service, if he was on the car at the time and where he could take hold of the rope. He was asked this question: "As a matter of fact, you expect every employe of the company to look out and preserve the property of the company, don't you?" And he answered, "Yes sir." We are not prepared to say that the jury were not warranted in

finding that this work had been done by section men on former occasions with the knowledge and consent of the officers of the company.

As to whether the company was negligent or not in the matter of the trolley pole, we think the evidence tends to show quite strongly that this pole had been loose in its socket for some considerable time before this accident, and that the jury were warranted in finding that it was out of order and had been for such a length of time as to charge the company with notice of its condition. That being our view, it is not necessary to discuss the question as to whether inspectors of cars were fellow-servants of the plaintiff or not.

We feel, that the plaintiff should not be considered a mere volunteer, but that he was entitled to protection against the negligence of the company while performing this service. The judgment of the court of common pleas will therefore be affirmed.

*King & Tracy,* for plaintiff in error.

*C. A. Thatcher,* for defendant in error.